**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

CHRISTOPHER ERIC HARDY,

                              Plaintiff,

v.                                                        3:17-CV-266
                                                          (CFH)
NANCY A. BERRYHILL, Commissioner
of Social Security,

                              Defendant.
_____

**APPEARANCES:**                              **OF COUNSEL:**

LACHMAN, GORTON LAW FIRM          PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, New York 13761-0089
Attorneys for plaintiff

U.S. SOCIAL SECURITY ADMIN.          LORIE E. LUPKIN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
26 Federal Plaza
New York, New York 10019
Attorneys for defendant

**CHRISTIAN F. HUMMEL,**
**U.S. Magistrate Judge**

<u>**MEMORANDUM-DECISION & ORDER**</u>

        Currently before the Court, in this Social Security action filed by Christopher Eric

Hardy ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion

for judgment on the pleadings and Defendant's motion for judgment on the pleadings.

(Dkt. Nos. 10 and 11.)  For the reasons set forth below, Plaintiff's motion for judgment

on the pleadings is denied and Defendant's motion for judgment on the pleadings is

granted.  The Commissioner's decision denying Plaintiff's disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born in 1972, making him 40 years old at the alleged onset date and 43 years old at the date of the ALJ's decision.  Plaintiff reported obtaining an Associate's degree in computer science and having pursued, but not completed, a Bachelor's degree.  Plaintiff has past work as a customer service representative and sandwich maker/deliverer.  At the initial level, Plaintiff alleged disability due to depression and social anxiety with panic attacks, mood swings, racing thoughts, inability to complete tasks, constant fight or flight mood, and inability to sleep.

### B.    Procedural History

Plaintiff applied for Supplemental Security Income on May 6, 2013, alleging disability beginning October 1, 2012.  Plaintiff's application was initially denied on July 23, 2013, after which he timely requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff appeared at two hearings before ALJ Elizabeth W. Koennecke on June 8, 2015, and September 21, 2015, respectively.  On September 23, 2015, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.

(T.42-61.)[1]  On February 10, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (T. 36-41.)

## C.    ALJ Decision

Generally, in her decision, the ALJ made the following six findings of fact and conclusions of law.  (T. 47-57.)  First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 6, 2013, the application date.  (T. 47.)  Second, the ALJ found that Plaintiff has a severe mental impairment (variously characterized).  (T. 47-48.)  Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (T. 48-50.)  Specifically, the ALJ considered Listings 12.04 (affective disorders), 12.06 (anxiety related disorders), and 12.09 (substance addiction disorders).  (*Id.*)  Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following non-exertional limitations:

> The claimant retains the ability to understand and follow simple instructions and directions, perform simple tasks independently, maintain attention and concentration for simple tasks, regularly attend to a routine and maintain a schedule, handle simple, repetitive work-related stress in that the claimant can make occasional decisions directly related to the performance of simple tasks in a position with consistent job duties that does not require the claimant to supervise or manage the work of others.  He should avoid work requiring more complex interaction or joint effort to achieve work goals. He can have no contact with the public.

---

[1]     The Administrative Transcript is found at Dkt. No. 9.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

(T. 50.)  Fifth, the ALJ found that Plaintiff is unable to perform any past relevant work.

(T. 55.)  Sixth, and last, the ALJ found that Plaintiff is capable of performing other jobs

existing in significant numbers in the national economy.  (T. 55-56.)  The ALJ therefore

concluded that Plaintiff is not disabled.

### D.    Arguments

### 1.    Plaintiff's Arguments

Generally, Plaintiff makes four arguments in support of his motion for judgment

on the pleadings.  (Dkt. No. 10, at 3, 9-26 [Pl.'s Mem. of Law].)  First, Plaintiff argues

that he cannot meet the basic mental demands of work because the examining mental

health professionals of record have identified significant impairments.  (*Id.* at 9-25.)

Specifically, Plaintiff argues that treating providers psychiatrist Albert Wolkoff, M.D., and

social worker Donald Kain,[2] LCSW-R, both assessed marked or greater (extreme)

limitations in areas of functioning related to the basic mental demands of work and other

mental abilities and that consultative examiner Mary Ann Moore, Psy.D., assessed a

moderate to marked limitation in relating adequately with others and the ability to

maintain a regular schedule.  (*Id.* at 10-11.)  Plaintiff also argues that skill level, and

specifically the ALJ's limitation to unskilled work, does not properly account for his

mental impairments (specifically in the ability to handle stress, maintain attention and

concentration, and maintain acceptable levels of work pace and/or attendance).  (*Id.* at

11-12.)

---

[2]     The Court notes that Plaintiff's brief appears to refer to Mr. Kain intermittently as Mr. Klein and Mr. Kain.  (Dkt. No. 10, at 2, 6-7, 10, 20-23, 25 [Pl.'s Mem. of Law].)

Second, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because it does not account for the full extent of his mental limitations. (*Id.* at 1, 13-25.)  Specifically, Plaintiff argues that the ALJ improperly weighed the medical evidence, failed to apply the treating physician rule, and improperly substituted her own judgment for that of a/the competent medical opinion(s). (*Id.* at 1, 13-23.)

Regarding the opinion of non-examining state Agency consultant E. Kamin, Ph.D., Plaintiff argues that the ALJ erred in affording great weight to this opinion because (a) Dr. Kamin is a non-examining consultant, (b) Dr. Kamin reviewed very little medical evidence, (c) the subsequent clinical findings identify much more severe psychiatric limitations than those opined by Dr. Kamin, (d) Dr. Kamin does not point to any treating clinical evidence or provide any meaningful explanation for his conclusions, (e) the record evidence as a whole is inconsistent with Dr. Kamin's conclusions, (f) Dr. Kamin is not a psychiatrist like Dr. Wolkoff, and (g) Dr. Kamin's opinion is inconsistent with his own assessments because he failed to explain why he did not include any limitations for areas in which he found moderate impairment. (*Id.* at 13-17.)  Plaintiff also argues that the RFC does not properly account for Dr. Kamin's assessed limitations. (*Id.* at 24-25.)

Regarding Dr. Wolkoff's opinion, Plaintiff argues that the ALJ erred in failing to specify what weight she afforded to this opinion and in failing to afford this opinion controlling weight. (*Id.* at 17-21.)  Specifically, Plaintiff argues that the ALJ's reasons for not affording controlling weight to this opinion (that it is not supported by Dr. Wolkoff's findings when examining Plaintiff and it is contradicted by other evidence) are the

5

product of legal error and are not supported by substantial evidence. (*Id.* at 18.)

Plaintiff argues that the ALJ may not reject a treating physician's opinion on the basis

that the opinion allegedly conflicted with the physician's own clinical findings. (*Id.*)

Plaintiff also argues that although the ALJ cited to Plaintiff's daily activities as

inconsistent with Dr. Wolkoff's opinion, the activities cited are not inconsistent with this

opinion because they are unrelated to the issues that prevent Plaintiff from engaging in

substantial gainful activity. (*Id.* at 18-19.)

Plaintiff argues that Dr. Moore's opinion is largely consistent with Dr. Wolkoff's

opinion in that they both identify significant limitations in the same areas of functioning.

(*Id.* at 19-20.) Plaintiff also argues that Dr. Moore's findings are the result of a brief,

one-time consultative examination and therefore have little value and are not sufficiently

substantial to override Dr. Wolkoff's opinion. (*Id.* at 20.) Plaintiff notes that the ALJ

gave Dr. Moore's opinion some weight because Plaintiff's presentation during the

consultative examination was considerably worse than during multiple other mental

status exams with his treating psychiatrist. (*Id.* at 23.) Plaintiff argues that this

observation actually supports his claim for benefits and demonstrates the difficulties he

has in interacting with others, particularly in regards to the worsening of his condition in

the unfamiliar setting with the consultative examiner. (*Id.*) Plaintiff also argues that the

RFC does not include significant limitations opined by Dr. Moore including moderate to

marked limitations in the ability to relate adequately with others. (*Id.* at 24-25.)

Regarding Mr. Kain's opinion, Plaintiff argues that the ALJ erred in giving this

opinion little evidentiary weight and that the ALJ's reasoning for doing so is not

supported by substantial evidence. (*Id.* at 21-23.) Specifically, Plaintiff argues that the

fact that Mr. Kain's opinion is based, in part, on subjective complaints is not a proper basis for discounting his opinion.  (*Id.* at 21-22.)  Plaintiff argues that, contrary to the ALJ's conclusion that Mr. Kain did not perform any mental status examinations, Mr. Kain's notes do record Plaintiff's mental status.  (*Id.* at 22.)  Plaintiff also argues that the ALJ may not interject her lay opinion as to what constitutes an appropriate psychological examination or treatment protocol and that Mr. Kain's treatment of Plaintiff was fully consistent with his opinion.  (*Id.*)  Plaintiff argues that an application of the regulatory factors used in weighing medical opinions indicates that Mr. Kain's opinion is entitled to more than very little weight because he had an ongoing examining relationship with Plaintiff and because his opinions are consistent with the medical evidence of record, his treatment records, and Dr. Wolkoff's opinion.  (*Id.*)

Third, Plaintiff argues that the ALJ improperly analyzed Plaintiff's credibility and the severity of his symptoms.  (*Id.* at 1, 23-24.)  Specifically, Plaintiff argues that the findings cited by the ALJ (relating to insight, judgment, orientation, and lack of hallucinations or delusions) are not related to the significant anxiety and inability to relate with others alleged by Plaintiff.  (*Id.* at 23.)  Plaintiff also argues that his past work does not provide substantial support for the ALJ's credibility determination because, although the ALJ pointed to it in support of her conclusion that he is not credible, she found that Plaintiff could not perform that past work.  (*Id.* at 24.)  Plaintiff additionally argues that the ALJ erred in relying on his activities of daily living because the activities identified by the ALJ are unrelated to the psychiatric issues that preclude him from working and there is no evidence that he engages in any such activities to a degree consistent with full-time work.  (*Id.*)

Fourth, Plaintiff argues that the ALJ's Step Five determination is not supported by substantial evidence.  (*Id.* at 1, 25-26.)  Specifically, Plaintiff argues that the testimony from the vocational expert ("VE") cannot constitute substantial evidence because it was based on a hypothetical question that did not accurately reflect the full extent of Plaintiff's psychiatric limitations.  (*Id.* at 26.)  Plaintiff also argues that that the ALJ failed to explain how someone with substantial loss in the ability to interact with others would be able to deal with people sufficiently to learn the jobs identified at Step Five.  (*Id.* at 25.)  Plaintiff argues that the ALJ's failure to address this issue is prejudicial because if the two of the jobs (which have a specific vocational preparation ("SVP") of 2, meaning they can take up to one month to learn) were omitted, the remaining position of cleaner would constitute only 5,573 jobs in the national economy, which Plaintiff argues does not represent a significant number of jobs.  (*Id.*)

## 2.  Defendant's Arguments

Generally, Defendant makes four arguments in support of her motion for judgment on the pleadings.  (Dkt. No. 11, at 8-22 [Def.'s Mem. of Law].)  First, Defendant argues that the ALJ's decision appropriately determined that Plaintiff could meet the basic mental demands of unskilled work.  (*Id.* at 8-11.)  Specifically, Defendant argues that the ALJ's RFC determination acknowledged that Plaintiff had some limitations with work-related stress and was limited to repetitive work-related stress that involved only occasional decision-making in the performance of simple tasks associated with job duties that did not require him to supervise or manage the work of others, engage in complex interaction or joint effort to achieve work goals, or be in contact with

the public.  (*Id.* at 9.)  Defendant notes that the mental activities of unskilled work do not include performing any supervisory duties or complex interactions with others in a joint effort to achieve work goals or even require contact with the public.  (*Id.* at 10.) Defendant argues that it was therefore incumbent upon Plaintiff to elaborate on how the ALJ's RFC was erroneous.  (*Id.*)

Defendant also argues that Plaintiff has not cited to evidence that supports the contention that he was unable to maintain attention and concentration for simple tasks. (*Id.*)  Defendant notes that Dr. Wolkoff's mental status findings did not reflect deficits in attention and concentration.  (*Id.*)  Defendant also notes that Dr. Moore assessed moderate limitations in attention and concentration, but also reported that Plaintiff had obtained a 4.0 GPA when studying computer science and cyber security in college and that Plaintiff had been doing well with his studies, but he had to stop taking classes because of finances.  (*Id.* at 10.)  Defendant notes that Dr. Kamin concluded that there was no evidence of any limitations in Plaintiff's ability to understand, remember, or carry out short and simple instructions and that Plaintiff was not significantly limited in his ability to maintain attention and concentration for extended periods of time.  (*Id.* at 10-11.)

Second, Defendant argues that the ALJ appropriately considered and weighed the medical and opinion evidence in determining Plaintiff's RFC.  (*Id.* at 11-15.) Specifically, Defendant argues that the ALJ appropriately declined to afford controlling weight to Dr. Wolkoff's opinion, noting that it was contradicted by other medical evidence in the record, Plaintiff's reported activities of daily living, and examination findings (including Dr. Wolkoff's).  (*Id.* at 12.)  Defendant argues that the ALJ was free to

discount Dr. Wolkoff's opinion in favor of a broader view of the medical evidence given the inconsistency of his June 2015 assessment with his examination findings.  (*Id.*)

Defendant also argues that the ALJ appropriately considered and weighed Mr. Kain's opinion, because of his limited treatment history with Plaintiff, and because his assessments appeared to be based primarily on Plaintiff's subjective complaints, his treatment records were absent of any supportive clinical findings to validate these assessed limitations, and the other evidence in the record contradicted his opinion.  (*Id.* at 12-13.)  Defendant notes that Mr. Kain's progress notes indicate Plaintiff had never participated in counseling prior to meeting with Mr. Kain in April 2015 and argues that Mr. Kain's session notes reflected that Plaintiff was making progress in becoming more trusting of others and in developing an understanding for resolving personal conflicts. (*Id.* at 13.)  Defendant additionally argues that the ALJ properly considered Dr. Kamin's opinion.  (*Id.* at 13-15.)  Defendant argues that any evidence subsequent to Dr. Kamin's July 2013 opinion (particularly the clinical findings from treating physician Dr. Wolkoff) was consistent with and supportive of Dr. Kamin's opinion.  (*Id.* at 14.)

Third, Defendant argues that the ALJ's decision appropriately assessed the severity of Plaintiff's symptoms.  (*Id.* at 15-19.)  Specifically, Defendant argues that the ALJ considered Plaintiff's subjective complaints as well as his reports that his medication helped his symptoms and clinical findings during his mental visits that were not supportive of his claims.  (*Id.* at 15-16.)  Defendant notes records from September 2013 to January 2014 indicating general improvement in Plaintiff's symptoms and generally benign mental health treatment notes from 2014 and 2015.  (*Id.* at 17.))

Defendant also argues that the ALJ further observed that Plaintiff's allegations of disability were inconsistent with his activities of daily living. (*Id.* at 17-18.)

Fourth, Defendant argues that the ALJ's Step Five determination is supported by substantial evidence. (*Id.* at 19-21.) Specifically, Defendant argues that the ALJ properly relied on VE testimony (which was in response to a hypothetical question with limitations supported by substantial evidence in the record) and applied the framework of Medical Vocational Rule 204.00. (*Id.* at 19-21.) Defendant argues that the ALJ determined an RFC which was based on substantial evidence and fully accounted for any stress-related limitations by limiting Plaintiff to jobs that did not require him to supervise or manage the work of others, more complex interaction or joint effort to achieve work goals, or contact with the public. (*Id.* at 20-21.)

### 3.  Plaintiff's Reply

Generally, Plaintiff makes two arguments on reply. (Dkt. No. 14, at 1-4 [Pl.'s Reply Mem. of Law].) First, Plaintiff argues that Defendant does not respond to Plaintiff's argument that the ALJ improperly accounted for Plaintiff's deficits in maintaining attention and concentration by limiting him to simple work and that Defendant argues instead that Plaintiff has no such deficits (which Plaintiff argues is contrary to the ALJ's own findings and constitutes a *post hoc* rationalization). (*Id.* at 1-2.) Plaintiff argues that the ALJ found he did have moderate impairment in attention and concentration, but failed to properly account for those limitations in the RFC. (*Id.* at 1.)

Second, Plaintiff again argues that the ALJ's reasons for failing to afford controlling weight to Dr. Wolkoff's opinion were improper and that an ALJ may not reject a physician's opinion solely on the grounds that it is inconsistent with the physician's own findings.  (*Id.* at 2.)  Plaintiff argues that the ALJ must cite to a medical opinion that disputes the treating physician's opinion and that the ALJ improperly rejected Dr. Wolkoff's opinion with respect to his ability to interact with others because there is no contrary medical opinion.  (*Id.* at 2-3.)  Plaintiff argues that the ALJ erred in concluding that Dr. Wolkoff's opined marked limitations in interacting appropriately with the general public and getting along with coworkers were inconsistent with the consultative examination and that Dr. Moore also assessed moderate to marked limitations in relating adequately with others due to panic disorder with agoraphobia.  (*Id.* at 2-3.)  Plaintiff argues that the ALJ therefore did not have a substantial basis to reject Dr. Wolkoff's opined limitations and improperly substituted her lay opinion for that of a/the competent medical opinion(s).  (*Id.* at 3.)  Plaintiff argues that Dr. Kamin's opinion cannot provide a substantial basis for rejecting Dr. Wolkoff's opinion because the ALJ did not cite to Dr. Kamin as a basis for rejecting Dr. Wolkoff's opinion, and because Dr. Kamin's opinion was based solely on a record review completed in 2013, which fails to take into account the significant psychiatric findings and developments after that time. (*Id.* at 3, n. 1.)

Plaintiff also argues that the ALJ places no limitations at all on interacting with supervisors or any other limitations on dealing with coworkers other than to restrict complex interaction or joint effort in the RFC and that the ALJ does not sufficiently

restrict Plaintiff's ability to deal with coworkers or supervisors in light of these opined

limitations in relating adequately with others.  (*Id.*)

## II.    LEGAL STANDARDS

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo*

whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health &*

*Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's

determination will be reversed only if the correct legal standards were not applied, or it

was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986

(2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied

correct legal principles, application of the substantial evidence standard to uphold a

finding of no disability creates an unacceptable risk that a claimant will be deprived of

the right to have her disability determination made according to the correct legal

principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*,

615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to

"more than a mere scintilla," and has been defined as "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  *Richardson v.*

*Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed

susceptible to more than one rational interpretation, the Commissioner's conclusion

must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining evidence from both

sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B.    Sequential Evaluation

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed"

14

> impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.  Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).


## III.    ANALYSIS

### A.    Whether Substantial Evidence Supports the ALJ's Analysis of the Opinion Evidence and Plaintiff's RFC

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 11, at 8-15 [Def.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. § 416.927(c).  "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'"  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).  However, there are situations where the treating physician's opinion is

not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).  However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc. Sec.*, 15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), *Report and Recommendation adopted by* 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013)).  After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129).  The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant.  20 C.F.R. §§ 416.927(c)(1)-(6).

RFC is defined as "'what an individual can still do despite his or her limitations . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'" *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)).  "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and

16

continuing basis." *Pardee*, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)).

"Ultimately, '[a]ny impairment-related limitations created by an individual's response to

demands of work . . . must be reflected in the RFC assessment.'" *Hendrickson v.*

*Astrue*, 11-CV-0927, 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting Social

Security Ruling ("SSR") 85-15, 1985 WL 56857, at *8).

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from

both examining and non-examining State agency medical consultants because these

consultants are qualified experts in the field of social security disability. *See also Frey*

*ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State

agency medical consultant constitutes expert opinion evidence which can be given

weight if supported by medical evidence in the record."); *Little v. Colvin*, 14-CV-0063,

2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are

qualified as experts in the evaluation of medical issues in disability claims.  As such,

their opinions may constitute substantial evidence if they are consistent with the record

as a whole.") (internal quotation marks omitted).  The RFC determination "must be set

forth with sufficient specificity to enable [the Court] to decide whether the determination

is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir.

1984).

In considering Plaintiff's mental impairment, the ALJ fond that Plaintiff has a mild

restriction activities of daily living, moderate difficulties in social functioning, and

moderate difficulties in concentration, persistence, or pace, and has experienced no

episodes of decompensation of extended duration.  (T. 48-49.)  The ALJ stated that

these findings were supported by and consistent with those of consultant Dr. Kamin who

reviewed Plaintiff's file in July 2013.  (T. 49, 68-71, 285-86.)  In determining Plaintiff's

RFC, the ALJ indicated that the RFC assessment was supported by the opinions of Drs.

Kamin and Moore, Plaintiff's reported activities of daily living, and the clinical findings

during mental status examinations in 2013, 2014, and 2015.  (T. 55.)

On July 1, 2013, consultative examiner Dr. Moore noted that Plaintiff generally

responded to questions and he had an adequate manner of relating socially, fair

hygiene, normal gait and posture, slightly restless motor behavior, appropriate eye

contact, a coherent and goal-directed thought process with no evidence of

hallucinations, delusions or paranoia, slightly anxious affect, nervous/restless mood, fair

insight, and fair to guarded judgment with depression and anxiety.  (T. 281-82.)  He was

oriented to person and place, knew the date but got the day wrong, and had impaired

attention and concentration (due to anxiety) and mildly impaired memory skills for more

remote information (possibly due to anxiety).  (*Id.*)  Dr. Moore diagnosed panic disorder

with agoraphobia, social phobia, PTSD, cannabis abuse, alcohol abuse (in remission),

and a need to rule out bipolar disorder NOS.  (T. 283.)  Dr. Moore indicated a fair to

guarded prognosis and the general cognitive ability to manage funds, but that Plaintiff

might need guidance due to continued substance abuse.  (*Id.*)

Dr. Moore opined that

> [t]he claimant shows mild limitation with regard to following
> and understanding simple directions and instructions and
> perform[ing] simple tasks independently.  He shows moderate
> limitations in regard to maintaining attention and
> concentration, learning new tasks, and performing complex
> tasks independently.  He shows moderate limitations in regard
> to appropriately dealing with stress.  He shows moderate to
> marked limitation in regard to relating adequately with others
> due to panic disorder with agoraphobia.  He shows moderate
> limitation in regard to making appropriate decisions.  He

18

> shows moderate to marked limitation in regard to maintaining
> a regular schedule.

(T. 282-83.)  She stated that "[t]he results of the examination appear to be consistent with psychiatric issues and substance abuse issues that may significantly interfere with the claimant's ability to function on a daily basis."  T. 283.  The ALJ afforded some weight to this opinion because it was a medical opinion and was supported by Dr. Moore's findings upon examining Plaintiff.  (T. 54.)  The ALJ noted, however, that Plaintiff's presentation during this examination was considerably worse than during multiple other mental status examinations.  (T. 54.)

On July 22, 2013, as part of the initial determination, non-examining consultant Dr. Kamin opined that Plaintiff had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning and concentration, persistence or pace, and no repeated episodes of decompensation of extended duration.  (T. 68-71.)  He also indicated that Plaintiff retained "the functional capacity for concentration, persistence and pace required in the work setting where he would have limited contact with public."  (T. 67.)  The ALJ afforded great weight to Dr. Kamin's opinion because it was a medical opinion based on his review of the available evidence in July 2013.  (T. 54-55.)  The ALJ indicated that subsequent evidence, particularly the clinical findings during mental status examinations by Plaintiff's treating psychiatrist, were consistent with Dr. Kamin's opinion.  (T. 55.)

On June 5, 2015, treating psychiatrist Dr. Wolkoff noted diagnoses of bipolar disorder (mixed type) and that Plaintiff was prescribed medications including Seroquel (which he indicated could cause fatigue) and Lithium.  (T. 338.)  Dr. Wolkoff opined extreme, marked, and more than slight limitations in concentration and persistence,

extreme and marked limitations in interacting with others, and extreme limitations in responding appropriately to ordinary stressors in a work setting with simple tasks.  (T. 337-39.)  Dr. Wolkoff opined that:

> [Plaintiff's] Bipolar Disorder Mixed Type would impair his ability to function even without[3] medications.   Without med[ications] he is confused, angry, violent, and depressed. He has had suicidal ideations, [complaints of] insomnia, racing thoughts, poor concentration, impulsiveness, fast driving, [and] loss of license [ten years ago], [and] high risk behavior.   He has a long history of Bipolar Disorder with hallucinations and delusions at times, but these two symptoms are controlled with his present [medications].   He also suffers from Social Phobia.

(T. 339.)  Dr. Wolkoff also opined that Plaintiff would be off-task more than thirty-three percent of the work day and absent three or more days per month.  (T. 338.)  He noted that the time frame for his opinion spanned from August 13, 2013 to June 5, 2015 (or since he first started treating Plaintiff).  (T. 338-39.)  The ALJ indicated that she did not afford controlling weight to Dr. Wolkoff's opinion because it was not supported by his own findings and was contradicted by other evidence, including Plaintiff's reported activities of daily living and the findings during the consultative examination.  (T. 53.) The ALJ also noted benign mental status examinations from 2013, 2014, and 2015.  (T. 53-54.)

In early June 2015, social worker Mr. Kain opined that Plaintiff had extreme limitations in concentration and persistence, extreme and marked limitations in interaction with others, and extreme limitations in responding appropriately to stress in a work setting with simple tasks.  (T. 331-34, 341-43.)  Mr. Kain noted diagnoses of

---

[3]      It is unclear whether Dr. Wolkoff meant to indicate that Plaintiff's bipolar disorder would impair his ability to function even with medications rather than without medications as his opinion states.  (T. 339.)

bipolar disorder (with depression, hyperactivity flight of ideas, impulsiveness, anger, and agitation) and PTSD (with anxiety, flashbacks, volatility, and social withdrawal) and that Plaintiff was prescribed medications including Lithium with no side effects indicated.  (T. 333.)  Mr. Kain indicated that

> [Plaintiff's] illness predates any of his drug abuse.  He has [PTSD], due to severe verbal, physical and emotional abuse experienced as a preschool child on through the time that he left his family of origin in his teens.  His mother is and was seriously mental ill and apparently never pursued treatment.  She provided no structure or supervision to [Plaintiff] and had none in her own life.  She left [him] to live with his maternal grandmother who provided a constant residence for him.  However, she was physically and emotionally abusive on a regular basis.  [Plaintiff] has no memory of most of the details of his early childhood and significant absence of memories of his latency and early teen years, which is consistent with a diagnosis of PTSD.  It is likely that drug [and] alcohol abuse arose as a result of his emotional [and] mental disturbance.  Even with recovery from [drug and alcohol] abuse, he would remain seriously disabled by Bipolar disorder and PTSD.

(T. 332.)  Mr. Kain also opined that Plaintiff would be off-task more than thirty-three percent of the day and absent three or more days per month.  (T. 333.)  Mr. Kain noted that his treatment observations spanned from April to June 2015.  (T. 332.)  The ALJ afforded little evidentiary weight to this opinion because Plaintiff did not begin seeing Mr. Kain until April 2015 and the opinion was based largely on Plaintiff's subjective complaints to Mr. Kain.  (T. 53.)  The ALJ also noted that Mr. Kain did not document any mental status examinations in his notes and that clinical findings during multiple mental status examinations by treating psychiatrist Dr. Wolkoff during 2014 and 2015 demonstrated that Plaintiff was not nearly as limited as Mr. Kain's opinion suggested.  (*Id.*)

Plaintiff's friend and roommate Debra Glavich submitted a statement on June 4, 2015, and also appeared at the first administrative hearing in June 2015. (T. 12-35, 269-71.)  Ms. Glavich indicated that she and Plaintiff had been friends since 2004 and he had lived with her in 2008 and again 2013. (T. 30, 269-71.)  She also indicated that Plaintiff exhibited irrational and paranoid thinking and isolating behaviors. (T. 32-33, 270-71.)  The ALJ afforded some weight to the Ms. Glavich's statements, noting that her opinion was given less weight than treating source opinions because she had a personal relationship with Plaintiff rather than a professional treatment relationship and she was a sympathetic and financially interested party as his housemate. (T. 52-53.)

As to the ALJ's weighing of the opinion evidence, the Court finds Plaintiff's arguments unpersuasive.  The ALJ's RFC analysis demonstrates a detailed review of the evidence with adequate reasons for the weight she afforded to the various opinions of record. (T. 51-55.)  The ALJ was entitled to resolve the evidentiary conflicts before her in determining the RFC and to rely on the opinion of non-examining consultant Dr. Kamin if it was better supported or more consistent with the evidence as a whole.  *See Bliss v. Colvin*, 13-CV-1086, 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *accord Petell v. Comm'r of Soc. Sec.*, 12-CV-1596, 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21, 2014).

Plaintiff argues that the ALJ erred in affording great weight to non-examining consultant Dr. Kamin, in part because Dr. Kamin reviewed very little medical evidence. (Dkt. No. 10, at 13-15 [Pl.'s Mem. of Law].)  However, the ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants

because these consultants are qualified experts in the field of social security disability.
*Frey ex rel. A.O. v. Astrue*, 485 F. App'x at 487; *Little v. Colvin*, 2015 WL 1399586, at
*9. The ALJ acknowledged that Dr. Kamin's opinion was based on his review of the
available evidence in July 2013 and also specifically stated that subsequent evidence,
particularly the clinical findings during mental status examinations by Plaintiff's treating
psychiatrist, were consistent with and support Dr. Kamin's opinion. (T. 55.) Because
the ALJ provided appropriate reasons based on the evidence as a whole, the Court
declines to find reversible error in the ALJ's affordance of weight to Dr. Kamin's opinion.
*See Henry v. Astrue*, 32 F. Supp. 3d 170, 187-88 (N.D.N.Y. 2012) (finding that the ALJ's
consideration of the treatment evidence, along with the State Agency medical
consultant's opinion, amounted to "such relevant evidence as a reasonable mind might
accept as adequate to support a conclusion").

While the ALJ did not articulate the specific weight she afforded to Dr. Wolkoff's
opinion, it is clear from the decision that (a) she did consider this opinion and (b) did not
afford it controlling weight (stating that "[t]his opinion is not entitled to controlling
weight"). (T. 53-55.) Contrary to Plaintiff's arguments, the ALJ did not reject treating
physician Dr. Wolkoff's opinion solely on the basis that it conflicted with Dr. Wolkoff's
own clinical findings. (Dkt. No. 10, at 18 [Pl.'s Mem. of Law].) Instead, the ALJ
indicated that this opinion was also not entitled to controlling weight because it was
contradicted by other evidence including Plaintiff's reported activities of daily living and
the findings during the consultative examination. (T. 53-54.) It is clear that the ALJ
declined to rely heavily on this opinion based a comparison between this opinion and
the RFC as well as the ALJ's explanations of the weight afforded to other opinions. (T.

50-55, 337-39.)  Inconsistency or lack of support from the evidence can constitute a good reason for rejecting an opinion even from a treating physician.  *See Saxon v. Astrue*, 781 F. Supp. 2d 92, 102 (N.D.N.Y. 2011) ("The less consistent an opinion is with the record as a whole, the less weight it is to be given.") (citing *Stevens v. Barnhart*, 473 F. Supp. 2d 357, 362 (N.D.N.Y. 2007)); *Otts v. Comm'r of Soc. Sec.*, 249 F. App'x 887, 889 (2d Cir. 2007) (noting that an ALJ may reject an opinion from a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record") (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)); 20 C.F.R. § 416.927(c)(4) (indicating that the extent that an opinion is consistent with the record as a whole is one of the factors considered when determining the amount of weight to which an opinion is entitled).

Plaintiff's arguments pertaining to Dr. Moore's examination and opinion are contradictory.  Plaintiff argues that this opinion and Dr. Wolkoff's opinion are largely consistent and the consultative examination findings are not inconsistent with Dr. Wolkoff's opinion, but simultaneously argues that Dr. Moore's findings are of little value because they are the result of a brief, one-time examination.  (Dkt. No. 10, at 19-23 [Pl.'s Mem. of Law].)  The ALJ did afford some weight to Dr. Moore's opinion and explained her reasons for doing so.  (T. 54.)  While Plaintiff takes issue with the ALJ's analysis of this opinion, "[t]here is no requirement that the agency accept the opinion of a consultative examiner concerning a claimant's limitations" where it is not consistent with the evidence as a whole.  *Pellam v. Astrue*, 508 F. App'x 87, 89 (2d Cir. 2013); *see also Kitka v. Comm'r of Soc. Sec.*, 15-CV-0060, 2016 WL 825259, at *9 (N.D.N.Y. Feb. 9, 2016) ("There is no requirement that the ALJ accept every limitation in the opinion of

24

a consultative examiner.") (citing *Pellam*, 508 F.App'x at 89).  Again, it is the ALJ's

responsibility to review all of the evidence before her and resolve inconsistencies or

conflicts therein to formulate the RFC.  *Bliss*, 2015 WL 457643, at *7; *Petell*, 2014 WL

1123477, at *10.  Therefore, substantial evidence supports the ALJ's decision to give

only some weight to Dr. Moore's opinion based on the inconsistency between Plaintiff's

presentation at the consultative examination and his presentation during other mental

status examinations.

Plaintiff also argues that the ALJ erred in affording little evidentiary weight to Mr.

Kain's opinion.  (Dkt. No. 10, at 21-23 [Pl.'s Mem. of Law].)  Plaintiff argues that the fact

that Mr. Kain's opinion is based, in part, on subjective complaints is not a proper basis

for discounting his opinion.  (*Id.* at 21-22.)  However, the ALJ can afford less than

controlling weight to a source who relied on subjective reports.  *See Aldrich v. Astrue,*

08-CV-0402, 2009 WL 3165726, at *7 (N.D.N.Y. Sept. 28, 2009) (finding that the ALJ

was entitled to afford less than controlling weight to the opinion of a treating physician

who appeared to rely on the plaintiff's subjective complaints more than any diagnostic or

clinical evidence); *Dailey v. Comm'r of Soc. Sec.*, 14-CV-1518, 2016 WL 922261, at *5

(N.D.N.Y. Feb. 18, 2016) (noting that "[a]n ALJ may provide less weight to a treating

source's opinion if that opinion is based on plaintiff's subjective complaints and not on

objective medical evidence") (citing *Rivera v. Colvin*, 592 F. App'x 32, 33 (2d Cir. 2015);

*Roma v. Astrue*, 468 F. App'x 16, 19 (2d Cir. 2012); *Major v. Astrue*, 12-CV-304S, 2013

WL 2296396, at *5 (W.D.N.Y. May 24, 2013); *Ford v. Astrue*, 06-CV-1227, 2010 WL

3825618, at *9 (N.D.N.Y. Sept. 24, 2010)).

Mr. Kain's session notes between April and early June 2015 consist of largely general summaries regarding Plaintiff's mood, symptoms, and history, but do not include detailed mental status examinations despite Plaintiff's arguments that these records do note Plaintiff's mental status. (T. 346-54.) The ALJ cited to the clinical findings during multiple mental status examinations by Plaintiff's treating psychiatrist during 2014 and 2015 in concluding that Plaintiff was not nearly as limited as Mr. Kain's opinion suggested; the ALJ also pointed out that Mr. Kain did not begin treating Plaintiff until April 2015, roughly two months prior to submitting his opinion. (T. 53.) The ALJ's reasons for giving this opinion little evidentiary weight are therefore supported by substantial evidence.

The ALJ's decision overall indicates an adequate review of the evidence of record and proper analysis of Plaintiff's RFC. (T. 47-55.) When determining the RFC, the ALJ considered the medical evidence, opinion evidence, Plaintiff's testimony and reports regarding his impairments, symptoms and limitations. (*Id.*) The RFC determination properly accounts for the limitations the ALJ found to be supported by this evidence including the opinions on which she relied in her analysis. (*Id.*) Because the ALJ's decisions when weighing the opinion evidence are supported by substantial evidence, the Court finds no merit in Plaintiff's arguments that the ALJ was required to include more significant mental limitations.

For the reasons above, the Court finds that the ALJ's RFC determination (including her analysis of the opinion evidence) and overall finding that Plaintiff is not disabled are supported by substantial evidence. Remand is therefore not required on these bases.

## B. Whether Substantial Evidence Supports the ALJ's Credibility Determination

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 11, at 15-19 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

In determining whether a claimant is disabled, the ALJ must also make a determination as to the credibility of the claimant's allegations. "'An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 205 (N.D.N.Y. 2012) (quoting *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)). The Second Circuit recognizes that "'[i]t is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant,'" and that, "[i]f there is substantial evidence in the record to support the Commissioner's findings, 'the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.'" *Schlichting*, 11 F. Supp. 3d at 206 (quoting *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983); *Aponte v. Sec'y, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984)). Due to the fact that the ALJ has the benefit of directly observing a claimant's demeanor and "other indicia of credibility," the ALJ's credibility assessment is generally entitled to deference. *Weather v. Astrue*, 32 F. Supp. 3d 363, 371 (N.D.N.Y. 2012) (citing *Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir. 1999)).

Here, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible.  (T. 51.)  The ALJ noted that Plaintiff told his providers that his medications helped and he reported no side effects from medications.  (*Id.*)  The ALJ noted that clinical findings during his mental health visits did not support his allegations and summarized generally normal findings from 2013, 2014, and 2015.  (*Id.*)  The ALJ indicated that the clinical findings during the consultative examination were inconsistent with how Plaintiff ordinarily presented during visits with his own providers, and therefore did not support his allegations regarding the severity of his conditions.  (T. 51-52.)  The ALJ also noted that, although Plaintiff reported that his symptoms had been ongoing since he was a teenager, he had demonstrated the ability to engage in substantial gainful activity and pursue an academic career.  (T. 52.)  Finally, the ALJ noted that Plaintiff's activities of daily living (including continuing to improve his knowledge and skills in computers, pay bills, travel alone, handle a savings account, shop online, drive, do yardwork and household chores, prepare food, cook meals, care for his personal needs, and take his medications without reminders) did not support his allegations regarding the severity of his conditions.  (*Id.*)

Plaintiff argues that the ALJ improperly analyzed his credibility and the severity of his symptoms by relying on his activities of daily living, past work history, and examination findings relating to insight, judgment, orientation and lack of hallucinations or delusions.  (Dkt. No. 10, at 3, 23-24 [Pl.'s Mem. of Law].)  The Court finds these arguments unpersuasive.

When considering Plaintiff's RFC and credibility, the ALJ summarized Plaintiff's testimony and reports as well as the medical and opinion evidence of record and considered the factors in 20 C.F.R. § 416.929 and SSR 96-7p (superseded by SSR 16-3p).  (T. 47-55; SSR 96-7p, 1996 WL 374186, at *3.)  The ALJ specifically stated that her credibility determination did not mean that Plaintiff had no symptoms, but rather that he had "failed to produce appropriate, probative evidence as required by the Social Security Act, Regulations and Rulings to substantiate his subjective allegations of disabling symptoms."  (T. 51.)  The reasons provided by the ALJ for her credibility determination are supported by substantial evidence and this Court will not reweigh the evidence of record.  *See Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing *Carroll*, 705 F.2d at 642).

For the reasons above, the Court finds that the ALJ's credibility determination is supported by substantial evidence.  Remand is therefore not required on this basis.

### C.     Whether the ALJ's Step Five Determination is Supported by Substantial Evidence

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 11, at 19-21 [Def.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

Although the claimant has the general burden to prove he has a disability under the definitions of the Social Security Act, the burden shifts to the Commissioner at Step Five "'to show there is other work that [the claimant] can perform.'"  *McIntyre v. Colvin*,

758 F.3d 146, 150 (2d Cir. 2014) (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)).  "An ALJ may rely on a vocational expert's testimony regarding a hypothetical [question] as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' [and]. . . [the hypothetical question] accurately reflect[s] the limitations and capabilities of the claimant involved." *McIntyre*, 758 F.3d at 151 (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983); citing *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981)). If a hypothetical question does not include all of a claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." *Pardee*, 631 F. Supp. 2d at 211 (citing *Melligan v. Chater*, 94-CV-0944, 1996 WL 1015417, at *8 (W.D.N.Y. Nov. 14, 1996)).

Here, the ALJ found that Plaintiff was capable of performing jobs existing in significant numbers in the national economy including cleaner, kitchen helper, and warehouse worker.  (T. 55-56.)  Plaintiff argues that Step Five determination is based on testimony from the VE which cannot constitute substantial evidence because it was based on a hypothetical question that did not accurately reflect the full extent of Plaintiff's psychiatric limitations.  (Dkt. No. 10, at 3, 25-26 [Pl.'s Mem. of Law].)  The Court finds this argument unpersuasive.  As discussed above in Sections III.A. and III.B. of this Decision and Order, the ALJ's analysis of Plaintiff's limitations and the resulting RFC and credibility determinations are supported by substantial evidence.

Plaintiff also argues that the jobs identified by the ALJ at Step Five require a learning period and that two of the jobs have a SVP of 2, but that the ALJ did not

explain how someone with substantial loss in the ability to interact with others would be able to deal with people sufficiently to learn these new jobs.  (Dkt. No. 10, at 25 [Pl.'s Mem. of Law].)  However, as discussed above in Sections III.A. and III.B. of this Decision and Order, the ALJ found that Plaintiff had moderate difficulties in social functioning (rather than the substantial loss of ability that Plaintiff alleges).  (T. 48-49.) Plaintiff's argument is therefore not based in the relevant facts and findings.  The Court finds that ALJ's findings regarding Plaintiff's mental limitations and RFC are supported by substantial evidence.

For the reasons above, the Step Five determination is also therefore supported by substantial evidence.  Remand is not required on this basis.

## IV.  CONCLUSION

**WHEREFORE**, for the reasons stated herein, it is

**ORDERED**, that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED**, that Defendant's motion for judgment on the pleadings (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**, and it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

**IT IS SO ORDERED.**

Dated: May 16, 2018
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

31